# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNESTO G. LIRA, | CASE NO. 1:05-cv-01643-LJO-GSA (PC) |
| Plaintiff, | ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND WITHIN THIRTY DAYS |
| v. | (Doc. 1) |
| BURKS, et al., | |
| Defendants. | |

**I.   SCREENING ORDER**

   **A.   Screening Requirement**

Plaintiff, Ernesto G. Lira, ("plaintiff") is proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed his complaint on December 29, 2005.

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited

1  exceptions," none of which applies to section 1983 actions. <u>Swierkiewicz v. Sorema N. A.</u>, 534
2  U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a). Pursuant to Rule 8(a), a complaint must contain "a
3  short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R.
4  Civ. Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the
5  plaintiff's claim is and the grounds upon which it rests." <u>Swierkiewicz</u>, 534 U.S. at 512. A court
6  may dismiss a complaint only if it is clear that no relief could be granted under any set of facts
7  that could be proved consistent with the allegations. <u>Id</u>. at 514. "'The issue is not whether a
8  plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support
9  the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and
10 unlikely but that is not the test.'" <u>Jackson v. Carey</u>, 353 F.3d 750, 755 (9th Cir. 2003) (quoting
11 <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974)); <u>see</u> <u>also</u> <u>Austin v. Terhune</u>, 367 F.3d 1167, 1171
12 (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the claim . . .
13 .'" (quoting <u>Fontana v. Haskin</u>, 262 F.3d 871, 977 (9th Cir. 2001))). However, "the liberal
14 pleading standard . . . applies only to a plaintiff's factual allegations." <u>Neitze v. Williams</u>, 490
15 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply
16 essential elements of the claim that were not initially pled." <u>Bruns v. Nat'l Credit Union Admin.</u>,
17 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting <u>Ivey v. Bd. of Regents</u>, 673 F.2d 266, 268 (9th Cir.
18 1982)).

19  **B.   Plaintiff's Claims**

20  The events at issue in the instant action allegedly occurred at the Merced County "Main"
21 Jail in Merced, California. At the time of filing his complaint, plaintiff was incarcerated at Deuel
22 Vocational Institution, serving twelve months for violating parole. Plaintiff names as defendants:
23 Burks (the Merced County Sheriff's Department Corrections Division "Main Jail" Commander);
24 Sergeants Carbonarro and Ferguson; Classification Officer Middleton; Deputy Sheriff's
25 Gallegos, Rosales, Baker, Lopez, Adams, Jane Doe, Donna, Sheryl, and O'Brian; and Registered
26 Nurse Ken.
27  Plaintiff's complaint generally relates to a period of confinement in the Merced County
28 Main Jail wherein he was housed in the SHU next to a violent, mentally ill inmate who

threatened and eventually assaulted plaintiff; subsequent lack of medical care; disciplinary hearings on various issues; and confiscation of his personal property.

Plaintiff alleges six claims for violations of the U.S. and California Constitutions against various of these defendants, to wit: (1) safety violations by Burks, Carbonarro, Gallegos, O'Brian, Adams, Lopez, Baker and Middleton for exposing plaintiff to assault by a known mentally ill and violent inmate so as to cause plaintiff physical injury; (2) violation of his due process rights regarding disciplinary actions by Burks, Carbonarro, Gallegos, Rosales, Donna, Sheryl, and O'Brian; (3) violation of his due process rights regarding solitary confinement by Burks, Carbonarro, Gallegos, Rosales; (4) violation of his right to access to the courts/law library by Burks, Carbonarro, Donna, Sheryl, and Ferguson; (5) violation of his rights to due process regarding confiscation of plaintiff's personal property by Burks, Carbonarro, Ferguson, Rosales, Gallegos, and O'Brian; and (6) deliberate indifference to plaintiff's serious medical needs by Ken, Baker, Lopez, Carbonarro, Burks, and Gallegos.  Plaintiff is seeking declaratory and compensatory damages.

### C. Linkage Requirement

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  In order to state a claim for relief under section 1983, plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of plaintiff's

3

federal rights.

The Court was only able to find factual allegations against defendants Adams and O'Brien on one page of plaintiff's complaint. As to Adams and O'Brien, plaintiff alleges they told plaintiff that inmate Lua was mentally ill; they told inmate Lua to stop urinating and throwing trash in the inmate shower; and that plaintiff advised both Adams and O'Brien (along with Gallegos) that Lua attempted to unplug plaintiff's television. Doc. 1, pp. 12-13. These facts fail to link Adams and/or O'Brien to any violations of plaintiff's constitutional rights. Plaintiffs claims against Adams and O'Brien fail and they are hereby dismissed.

Plaintiff indicated that he would identify defendant "Jane Doe" when discovery is initiated. However, the only facts relative to Jane Doe that plaintiff alleges are that she was his "attornies [sic] investigator;" that she saw his bleeding wounds, declined to interview him at that time, called for medical assistance, and advised plaintiff she would contact his family and inform them of his being injured in an attack. There is nothing about these alleged actions by "Jane Doe" that violate plaintiff's constitutional rights. Thus, plaintiff's claims against "Jane Doe" fail and she is hereby dismissed.

Plaintiff used the term "Def.s" throughout his complaint, without identifying which named defendant(s) the term implicated. In order to proceed under section 1983, plaintiff must allege sufficient facts to support a claim that *each* defendant named in the complaint either acted or failed to act in a manner that was adverse to plaintiff and that the defendant did so in retaliation against plaintiff for either litigating in court or filing inmate grievances. Plaintiff is cautioned that in his amended complaint, he must clearly identify what actions or omissions led to the violation of his rights and which defendants were responsible for each act or omission.

**D.    Plaintiff's Section 1983 Claims**

The Court screens plaintiff's complaint based on plaintiff's six delineated claims. A few of plaintiff's claims, as plead, are cognizable constitutional violations. Based on the allegations in plaintiff's complaint, he may be able, should he chose to amend, to rectify his pleading so as to state additional cognizable claims for relief under section 1983.

The Court will provide plaintiff with the opportunity to file an amended complaint that

complies with Rule 8(a) and sets forth for each defendant, *as briefly as possible*, what action that defendant took or failed to take and why (e.g., to retaliate against plaintiff for litigating in court or for filing inmate grievances). In the subsections that follow, the Court will provide plaintiff with the legal standards that, based on plaintiff's allegations, appear to be applicable. Plaintiff should utilize the legal standards provided in this order for guidance when filing his amended complaint.

### 1. *Safety Violations by Burks, Carbonarro, Gallegos, Lopez, Baker and Middleton*

Plaintiff alleges that defendants Burks, Carbonarro, Gallegos, Lopez, Baker, and Middleton violated their duty to ensure his safety by allowing circumstances to exist such that plaintiff was attacked and physically injured by a violent, mentally ill inmate (Lua).

"Prison officials have a duty to take reasonable steps to protect inmates from physical abuse." Hoptowit v. Ray 682 F.2d 1237, 1250-51 (9th Cir. 1982); see also Farmer v. Brennan 511 U.S. 825, 833 (1994).

To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. See Farmer, 511 U.S. at 834. To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate ... safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." Farmer, 511 U.S. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995). However, to prove knowledge of the risk, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. Farmer, 511 U.S. at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).

Plaintiff alleges that, four days after Middleton classified plaintiff as a SHU inmate, Burks, Carbonarro, Gallegos and Middleton placed inmate Lua in the cell next to plaintiff's. Plaintiff alleges that it was generally known that inmate Lua: was violent and mentally ill; went into fits of rage and accused plaintiff of having sexual contact with Lua's mother and girlfriend;

5

would "sock the walls" and tell plaintiff how he was going to beat plaintiff up; would urinate and throw trash in the inmate showers; attempted to unplug plaintiff's television; and was moved to the SHU because he antagonized and threatened other inmates in Ad Seg. Plaintiff alleges that, on January 13, 2005, knowing of these actions by inmate Lua, Gallegos, Carbonarro, Baker, Burks, Lopez and Middleton released inmate Lua on the same yard plaintiff was on. Inmate Lua thereafter attacked plaintiff causing plaintiff to sustain a deep bleeding gash on his head, a bite on his ear, injuries to his knee and back, and impact from being hit on the side of his head near his eye and temple – such that plaintiff continued to have headaches and difficulty hearing as of the date he filed his complaint. Thus, plaintiff has stated a cognizable claim against Gallegos, Carbonarro, Baker, Burks, Lopez, and Middleton for failing to take reasonable steps to protect plaintiff from physical harm.

### 2. *Due Process Violation(s) Regarding Disciplinary Actions by Burks, Carbonarro, Gallegos, Rosales, Donna, and Sheryl.*

Plaintiff alleges that defendants Burks, Carbonarro, Gallegos, Rosales, Donna, and Sheryl violated his rights to due process by failing to provide plaintiff with notice, investigation and hearing prior to four disciplinary findings, all of which resulted in loss of privileges.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

"[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no

6

entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez v. DeRobertis, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986). Actions in reviewing prisoner's administrative appeal cannot serve as the basis for liability under a § 1983 action. Buckley, 997 F.2d at 495.

When a prisoner faces disciplinary charges, prison officials must provide the prisoner with (1) a written statement at least twenty-four hours before the disciplinary hearing that includes the charges, a description of the evidence against the prisoner, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. See Wolff v. McDonnell, 418 U.S. 539, 563-70 (9th Cir. 1974); see also Superintendent v. Hill 472 U.S. 445, 454 (1985); Neal v. Shimoda, 131 F.3d 818, 830-31 (9th Cir. 1997); Walker v. Sumner, 14 F.3d 1415, 1419-20 (9th Cir. 1994); McFarland v. Cassady, 779 F.2d 1426, 1428 (9th Cir. 1986).

"When prison officials limit a prisoner's right to defend himself they must have a legitimate penological interest." Koenig v. Vannelli, 971 F.2d 422, 423 (9th Cir. 1992) (per curiam) (concluding that prisoners do not have a right to have an independent drug test performed at their own expense). The right to call witnesses may legitimately be limited by "the penological need to provide swift discipline in individual cases . . . [or] by the very real dangers in prison life which may result from violence or intimidation directed at either other inmates or staff." Ponte v. Real, 471 U.S. 491, 495 (1985); see also Mitchell v. Dupnik, 75 F.3d 517, 525 (9th Cir. 1996); Koenig, 971 F.2d at 423; Zimmerlee v. Keeney, 831 F.2d 183, 187-88 (9th Cir. 1987)(per curiam).

"[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board . . . ." Hill, 472 U.S. at 455; see also Touissaint v. McCarthy, 926 F.2d 800, 802-03 (9th Cir. 1991); Bostic v. Carlson, 884 F.2d 1267, 1269-70 (9th Cir. 1989);

Jancsek, III v. Oregon bd. Of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987); see especially Burnsworth v. Gunderson, 179 F.3d 771, 774-74 (9th Cir. 1999) (where there is no evidence of guilt may be unnecessary to demonstrate existence of liberty interest.)  The "some evidence" standard does not apply to original rules violation report where a prisoner alleges the report is false.  Hines v. Gomez, 108 F.3d 265, 268 (9th Cir. 1997).  The results of plaintiff's inmate appeal(s) cannot give rise to any claims for relief under section 1983.

Here, plaintiff alleges four instances where he was found guilty of infractions without being provided notice of the charges against him, opportunity to investigate, and an unbiased disciplinary hearing.  Specifically, plaintiff alleges that he was found guilty of: (1) fighting with inmate Lua – assessed 60 days loss of privileges; (2) possessing "pruno" – assessed another 60 days loss of privileges; (3) attempting to defraud Sheryl of a phone card – assessed 30 days loss of privileges; and (4) having money and tobacco – no loss of privileges alleged.

Plaintiff alleges that Burks found him guilty of fighting with Lua without notice of the charges, opportunity to investigate, or conducting an unbiased hearing.  This claim against Burks is cognizable for violation of plaintiff's right to due process in a disciplinary proceeding.

Plaintiff alleges that Rosales falsely implicated plaintiff of possessing "pruno;" that plaintiff was found guilty without notice, investigation, or hearing; and that Carbonarro and Burks denied his appeals at the higher levels.  Per Hines, plaintiff has stated a cognizable claim against Rosales for filing a false report against him.  However, plaintiff's claims regarding the decisions by Carbonarro and Burks denying plaintiff's appeals are not cognizable and cannot serve as the basis for liability under a § 1983 action.  Buckley, 997 F.2d at 495.

Plaintiff alleges that Sheryl falsely implicated plaintiff for attempting to defraud her of a phone card; that plaintiff was found guilty without notice, investigation, or hearing; and that Carbonarro and Burks denied his appeals at the higher levels.  Per Hines, plaintiff has stated a cognizable claim against Sheryl for filing a false report against him.  However, plaintiff's claims regarding the decisions by Carbonarro and Burks denying plaintiff's appeals are not cognizable and cannot serve as the basis for liability under a § 1983 action.  Buckley, 997 F.2d at 495.

Plaintiff alleges that he was falsely implicated of possession of money and tobacco; that plaintiff was found guilty without notice, investigation, or hearing; and that Carbonarro and Burks denied his appeals at the higher levels. Per Hines, plaintiff has stated a cognizable claim against the unnamed person who filed a false report against him. However, plaintiff's claims regarding the decisions by Carbonarro and Burks denying plaintiff's appeals are not cognizable and cannot serve as the basis for liability under a § 1983 action. Buckley, 997 F.2d at 495.

Plaintiff fails to link Donna in any of his factual allegations regarding disciplinary actions. Thus, plaintiff's claims against Donna for violation of his right to due process fail and are dismissed.

### 3. *Due Process Violations by Burks, Carbonarro, Gallegos, and Rosales which subjected Plaintiff to Cruel and Unusual Conditions of Confinement*

Plaintiff's third claim states that Burks, Carbonarro, Gallegos and Rosales violated his right to due process and subjected him to over 120 days of psychological and oppressive conditions of confinement which violated of the Eighth Amendment.

Plaintiff alleges that he was subjected to confinement 24 hours a day, for 120 days in a windowless, cement, isolation cell, within earshot of inmate Lua's yelling and ranting where he was denied visitation, yard exercise, television, and canteen privileges. Plaintiff further alleges that he was "subject to cruel treatment by defendant's (sic) where serious injuries were inflicted by their indifference to his punitive conditions." Doc. 1, pg. 21. Plaintiff alleges that one evening inmate Lua was so out of control pepper pallets were used and that inmate Lua was moved and plaintiff was moved into inmate Lua's cell. Plaintiff alleges that he pled guilty to the charges against him in court just so he would be transferred to another facility. Doc. 1, pg. 21-22.

Plaintiff's claims on this incident fail and are dismissed for a number of reasons.

First, in plaintiff's factual statement, he fails to link Burks, Carbonarro, Gallegos and Rosales to these alleged violations. In fact, his entire commentary on the 120 days in the isolation cell fails to link the egregious conditions, or any lack of due process to *any* defendant.

Second, plaintiff's claims for violation of his due process rights fail as he did not allege

any facts regarding the circumstances that precipitated his placement in the isolation cell, and whether he received any notice, opportunity to investigate, and a hearing prior thereto.

Finally, plaintiff's claims for the conditions of confinement within the isolation cell do not rise to the level of a constitutional violation. "What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishment Clause depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. at 8 (quotations and citations omitted). "[E]xtreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim." Id. at 9 (citation omitted). With respect to this type of claim, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Id. (quotations and citations omitted). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." Hudson v. McMillian, 503 U.S. 1, 9 (1992) (internal quotation marks and citations omitted). A windowless cement cell, combined with audio disturbances from a ranting mentally ill inmate, denial of visitation, yard exercise, television, and canteen privileges simply does not rise to the level of extreme deprivations that is required for a conditions of confinement claim under the Eight Amendment. Thus, plaintiff fails to state a cognizable claim for the conditions of his confinement under the Eighth Amendment.

    **4.**   ***Access to the Courts/Law Library Violations by Burks, Carbonarro, Donna, Sheryl, and Ferguson***

Plaintiff alleges that defendants Burks, Carbonarro, Donna, Sheryl, and Ferguson denied him access to the courts by denying him access to the law library – particularly in light of his having a case pending in the 9th Circuit Court of Appeals. Plaintiff alleges that his appeal was dismissed due to his inability to comply with an order to pay the docket fee and perfect his appeal.

Inmates have a fundamental constitutional right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996). The right of access is merely the right to bring to court a grievance the

inmate wishes to present, and is limited to direct criminal appeals, habeas petitions, and civil rights actions.  Id. at 354.  The State is not required to enable the inmate to discover grievances or to litigate effectively once in court.  Id.

Inmates do not have the right to a law library or legal assistance.  Id. at 351.  Law libraries and legal assistance programs are only the means of ensuring access to the courts.  Id.  However, actual law libraries may be replaced "with some minimal access to legal advice and a system of court-provided forms such as those that contained the original complaints in two of the more significant inmate-initiated cases in recent years ... and ...  forms that asked the inmates to provide only the facts and not to attempt any legal analysis." (Citations omitted.)  Id at 352.

Because inmates do not have "an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense."  Id.  Rather, an inmate claiming interference with or denial of access to the courts must show that he suffered an actual injury.  Id at 351.

Plaintiff alleges the actual injury of dismissal of his case in the 9th Circuit Court of Appeals due to his being denied access to the law library at the Merced County Main Jail. Further, plaintiff alleges that, despite having the funds available in his account, he was unable to pay the $255.00 filing fee to the 9th Circuit because defendants failed and/or refused to forward the money.  Thus, plaintiff has stated a cognizable claim against Burks, Carbonarro, Donna, Sheryl, and Ferguson for denial of access to the courts.

### 5. *Due Process Violations Regarding Plaintiff's Personal Property by Burks, Carbonarro, Ferguson, Rosales, Gallegos, and O'Brian*

Plaintiff alleges that he was not provided a disciplinary hearing prior to: (1) removal of his jail provided T.V. and telephone – subsequent to the attack by inmate Lua; and (2) removal of his private property by Rosales, Carbonarro and Burks – subsequent to being found guilty of possessing money and tobacco.  Doc. 1, pp. 17 & 21.  Plaintiff further alleges that it was a common practice by defendants to take plaintiff's canteen whenever plaintiff filed a grievance. Doc. 1, pg. 21.

The Due Process Clause protects prisoners from being deprived of property without due process of law, Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Prisoners have a protected interest in their personal property. Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). However, while an authorized, intentional deprivation of property is actionable under the Due Process Clause, see Hudson v. Palmer, 468 U.S. 517, 532, n.13 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985), neither negligent nor unauthorized intentional deprivations of property by a state employee "constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984).

Plaintiff fails to link the removal of the jail issued T.V. and telephone to any specific defendant(s). Additionally, plaintiff's claim is that the T.V. and telephone that were removed were "jail issued" – not his personal property. Thus, plaintiff's claim regarding removal of the jail issued T.V. and telephone are not cognizable.

Plaintiff's claim that Rosales, Carbonarro, and Burks removed his personal property subsequent to a finding of guilt on possession of money and tobacco would not generally rise to the level of violating the Due Process Clause. However, since plaintiff has alleged that the finding of guilt against him was based on a false report, and that no disciplinary hearing was conducted, he has stated a cognizable claim against Rosales, Carbonarro, and Burks.

Plaintiff's allegations regarding the removal of his canteen each time he engaged in protected activities (filing grievances) are vague and insufficient to state a cognizable claim for violation of the Due Process Clause. Out of an abundance of caution, the Court also reviewed this claim under the standards for stating a cognizable claim for retaliation.

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some

adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003). Adverse action is action that "would chill a person of ordinary firmness" from engaging in that activity. Pinard v. Clatskanie School Dist., 467 F.3d 755, 770 (9th Cir. 2006); White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000); see also Lewis v. Jacks, 486 F.3d 1025 (8th Cir. 2007); see also Thomas v. Eby, 481 F.3d 434, 440 (6th Cir. 2007); Bennett v. Hendrix, 423 F.3d 1247, 1250-51 (11th Cir. 2005); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005); Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir. 2004); Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Both litigation in court and filing inmate grievances are protected activities and it is impermissible for prison officials to retaliate against inmates for engaging in these activities. However, not every allegedly adverse action will be sufficient to support a claim under section 1983 for retaliation. In the prison context, cases in this Circuit addressing First Amendment retaliation claims involve situations where the action taken by the defendant was clearly adverse to the plaintiff. Rhodes, 408 F.3d at 568 (arbitrary confiscation and destruction of property, initiation of a prison transfer, and assault in retaliation for filing grievances); Austin, 367 F.3d at 1171 (retaliatory placement in administrative segregation for filing grievances); Bruce, 351 F.3d at 1288 (retaliatory validation as a gang member for filing grievances); Hines v. Gomez, 108 F.3d 265, 267(9th Cir. 1997) (retaliatory issuance of false rules violation and subsequent finding of guilt); Pratt, 65 F.3d at 806 (retaliatory prison transfer and double-cell status); Valandingham, 866 F.2d at 1138 (inmate labeled a snitch and approached by other inmates and threatened with harm as a result); Rizzo, 778 F.2d at 530-32 (retaliatory reassignment out of vocational class and transfer to a different prison).

     Removal of a canteen every time plaintiff filed a grievance is not adverse action that "would chill a person of ordinary firmness" from engaging in that activity. Further, plaintiff did not make any allegations as to whether removal of his canteen advanced a legitimate correctional

goal.  Thus, plaintiff's allegation regarding removal of his canteen each time he filed a grievance fails to state a cognizable claim.

### 6. *Deliberate Indifference to Plaintiff's Serious Medical Needs by Ken, Baker, Lopez, Carbonarro, Burks, and Gallegos.*

Plaintiff alleges that, subsequent to being attacked by inmate Lua, his injuries were vastly ignored and ultimately untimely treated.

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  A prisoner's claim of inadequate medical care does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)).  A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment," or in the manner "in which prison physicians provide medical care." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin, 974 F.2d at 1060 (citing Shapely v. Nevada Bd. of State Prison Commr's, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." Toguchi, 391 F.3d at 1060.  "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837).  "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no

matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).  Further, "[a] difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a s 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted).  To prevail, plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986) (internal citations omitted).

Plaintiff alleges that, subsequent to the incident with inmate Lua, defendants Carbonarro, Lopez, Gallegos, Baker and R.N. Ken saw that he was bleeding profusely; left him in a dry interview room for several hours; and delayed his receipt of treatment from the jail's doctor who ultimately cleaned, stapled, and medicated his wounds.  While plaintiff does state that he suffers from headaches and hearing problems from the incident to this day, he failed to allege that the delay of medical treatment led to further harm.  McGuckin, 974 F.2d at 1060 (citing Shapely v. Nevada Bd. of State Prison Commr's, 766 F.2d 404, 407 (9th Cir. 1985)).  Thus, plaintiff fails to state a conginzable claim for deliberate indifference to his serious medical needs.

**7.     *Visitation with Plaintiff's Fiancé***

While plaintiff does not list a claim directed at visitation, near the end of his complaint, plaintiff alleges that he was denied visits from his girlfriend since she had spent time in the Merced County Jail.  Doc. 1, pg. 25.

The Due Process Clause protects prisoners from being deprived of life, liberty or property without due process of law.  Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 459-60 (1989).  In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought.  Liberty interests may arise from the Due Process Clause itself or from state law.  Hewitt v. Helms, 459 U.S. 460, 466-68 (1983).  "The denial of prison access to a particular visitor 'is well within the terms of confinement ordinarily contemplated by a prison sentence,' and therefore is not independently protected by the Due Process Clause." Kentucky Dep't of Corr., 490 U.S. at 460

(quoting Hewitt, 459 U.S. at 468).  Restricting visitation from persons who have been incarcerated in the past is based on legitimate safety/security concerns and does not violate the Due Process Clause.

Thus, plaintiff has failed to state a cognizable claim for being denied visits from his girlfriend.

### E. *State Law Claims*

Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c).  "[O]nce judicial power exists under § 1367(a), retention of supplemental jurisdiction over state law claims under 1367(c) is discretionary."  Acri v. Varian Assoc., Inc., 114 F.3d 999, 1000 (9th Cir. 1997). "The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  The Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."  United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966).

Because plaintiff may be able to state a claims for relief under section 1983, the court reserves discretion to exercise supplemental jurisdiction over and to address plaintiff's state law claims after plaintiff files his amended complaint so as to allow plaintiff opportunity to state cognizable claims for relief under section 1983.

## II. CONCLUSION

For the reasons set forth above, plaintiff's complaint is dismissed, with leave to file an amended complaint within thirty days.  If plaintiff needs an extension of time to comply with this order, plaintiff shall file a motion seeking an extension of time no later than thirty days from the date of service of this order.

Plaintiff must demonstrate in his complaint how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227

(9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved. There can be no liability under section 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff is reminded that Fed.R.Civ.P. 18(a) provides that "'[a] party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.' Thus, multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915 1915(g)." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

Finally, plaintiff is advised that Local Rule 15-220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's complaint is dismissed, with leave to amend;
2. The Clerk's Office shall send plaintiff a civil rights complaint form;
3. Within **thirty (30) days** from the date of service of this order, plaintiff must either:
   a. File an amended complaint curing the deficiencies identified by the court in this order, or

      b.    Notify the court in writing that he does not wish to file an amended complaint and wishes to proceed only on the claims identified by the court as viable/cognizable in this order; and

4.    If plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

**Dated:**   **April 1, 2008**           /s/ **Gary S. Austin**
                                                   UNITED STATES MAGISTRATE JUDGE